UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ROBERT TOUSSAINT,                       :
      Plaintiff,                              :
                                              :
      v.                                      :    Case No. 3:21cv32 (MPS)
                                              :
WARDEN GUADARAMA, ET AL.,               :
      Defendants.                             :

## INITIAL REVIEW ORDER

The plaintiff, Robert Toussaint, is currently confined at Osborn Correctional Institution in Somers, Connecticut ("Osborn"). He files this civil rights action pursuant to 42 U.S.C. § 1983 against Warden Guadarama, Deputy Warden Vasquez, Commissioner Quiros, Unit Manager Gammardella, Dr. Fury, Dr. Wright, Correctional Officer John Doe, Correctional Officer Jane Doe, and Correctional Officer of Operation. ECF No. 1. The allegations arise from the plaintiff's confinement as a sentenced prisoner[1] at Osborn from September 4, 2020 to November 2, 2020. For the reasons set forth below, the Court will allow only some of the claims to proceed.

## I.    Standard of Review

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* In undertaking this review, the Court is obligated to "construe" complaints "liberally and interpret[] [them] to raise the strongest

---

[1] State of Connecticut Department of Correction records reflect that the plaintiff is serving an eight-year sentence imposed on June 1, 2018. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=421690. The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).

arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted).

Although detailed allegations are not required under Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

## II.    Factual Allegations

On September 4, 2020, prison officials at Garner Correctional Institution ("Garner") transferred the plaintiff to Osborn. *See* Compl., ECF No. 1, ¶ 13. At that time, the plaintiff was sixty-four years old and suffered from high blood pressure and diabetes. *Id.* ¶ 11. He received insulin four times a day and blood pressure medication once a day. *Id.* At Garner, the plaintiff had tested negative for COVID-19. *Id.* ¶ 16.

Correctional Officers Jane Doe and John Doe, who worked in the Operation Room at Osborn, placed the plaintiff in a cell in C-Block. *Id.* at 3 ¶¶ 8-9; at 5 ¶ 14. Inmates in C-Block "were constantly catching Covid" or "had symptoms of Covid." *Id.* ¶ 15. The plaintiff asked Unit Manager Gammardella to arrange for him to be re-tested for COVID-19 and to transfer him to another housing unit. *Id.* ¶¶ 15-16. Unit Manager Gammardella directed the plaintiff to

2

contact the medical department regarding his request to be re-tested for COVID-19. *Id.* ¶ 16. The plaintiff sent requests to the medical department and to Drs. Fury and Wright asking that he be re-tested for COVID-19. *Id.* Neither the medical department, nor Dr. Fury, nor Dr. Wright responded to the requests for re-testing. *Id.*

On September 12, 2020, the plaintiff began to experience "light headaches" that lasted for days. *Id.* ¶ 17. During his visits to get his insulin shots, the plaintiff informed medical staff members that he was not feeling well. *Id.* In response to the plaintiff's complaints, staff members directed him to sign up for sick call. *Id.* The plaintiff signed up for sick call but was not summoned to the medical department. *Id.*

On September 17, 2020, the plaintiff submitted multiple requests to the medical department because he was sweating and experiencing headaches and a cough. *Id.* ¶ 18. In each request, the plaintiff explained that he suffered from high blood pressure and diabetes. *Id.*

At some point between September 17, 2020 to October 2, 2020, the plaintiff spoke to Warden Guadarama and Deputy Warden Vasquez. *Id.* ¶ 9. The plaintiff stated that he suffered from high blood pressure and diabetes and should not be housed in C-Block; he was experiencing headaches, a cough, and body aches; and he had sent requests to be re-tested for COVID-19 and to be treated for his symptoms to the medical department but had received no responses to his requests. *Id.* Warden Guadarama and Deputy Warden Vasquez ignored the plaintiff's complaints and did not contact the medical department regarding his symptoms. *Id.*

On October 7, 2020, the plaintiff believed that he was very sick because his symptoms had become worse. *Id.* ¶ 20. He informed a block officer that he needed to be examined by a medical staff member. *Id.* The officer instructed the plaintiff to send a written request to the

medical department.  *Id.*  The plaintiff sent a request to the medical department.  *Id.*

On October 9, 2020, the plaintiff experienced shortness of breath and tightness in his chest.  *Id.* at 7 ¶ 21.  A block officer permitted the plaintiff to go to the medical department.  *Id.*

Upon his arrival at the medical department, a nurse tested the plaintiff for COVID-19 and informed the plaintiff that if he had symptoms of COVID-19, he would be placed in the punitive segregation unit.  *Id.* ¶ 22; at 18, 20.  Drs. Fury and Wright authorized the plaintiff's placement in the segregation unit due to his symptoms of COVID-19.  *Id.* ¶ 22.  On October 10, 2020, medical staff members transferred the plaintiff to the quarantine unit at Osborn, B-Block. *Id.*  ¶ 23.  The plaintiff remained in the quarantine unit for three days.  *Id.*

On October 12, 2020, the plaintiff learned that he had tested positive for COVID-19.  *Id.* at 18, 20-21.  On October 13, 2020, medical staff members transferred the plaintiff to MacDougall-Walker Correctional Institution to be treated for COVID-19.  *Id.* ¶ 24.  The plaintiff remained at MacDougall-Walker for two weeks.  *Id.*  On October 23, 2020, medical staff members at MacDougall-Walker transferred the plaintiff back to Osborn.  *Id.* ¶ 25.  Upon his arrival at Osborn, the defendants placed the plaintiff in the punitive segregation unit for ten days instead of placing him in the quarantine unit.  *Id.* at 7-8 ¶ 25.

The defendants failed to provide him with any hygiene items, including a face cloth, soap, a toothbrush, and hot water.  *Id.* at 8-9 ¶¶ 25, 27.  The defendants and medical staff members instructed the block officers in the segregation unit not to permit the plaintiff to shower.  *Id.* at 8 ¶ 25.  The plaintiff submitted requests to Warden Guadarama, Deputy Warden Vasquez, and Commissioner Quiros regarding the inadequate and discriminatory treatment that he received during this confinement in the segregation unit but received no responses to his

4

requests. *Id.* at 8-9 ¶¶ 25, 27.  He also filed grievances complaining about the conduct of all defendants. *Id.* at 9 ¶¶ 27-28.

On November 2, 2020, block officers in the segregation unit informed the plaintiff that he could return to general population "if [they did not"] get any more complaints out of [him]." *Id.* at 8 ¶ 26.  The plaintiff agreed to stop making complaints and the Officers escorted the plaintiff back to his cell in C-Block. *Id.*  The officers instructed the plaintiff not to say anything about their request that he stop complaining. *Id.*

## III.    Discussion

The complaint includes five counts. *Id.* at 12-15.  In the second count, the plaintiff claims that Commissioner Quiros, Warden Guadarama, Deputy Warden Vasquez, Unit Manager Gammardella, and Drs. Fury and Wright failed to protect him from harm in violation of the First, Fourth, Eighth, and Fourteenth Amendments.  In the first, third and fourth counts, the plaintiff claims that Commissioner Quiros, Warden Guadarama, Deputy Warden Vasquez, Drs. Fury and Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe were deliberately indifferent to his health and subjected him to cruel and unusual punishment and hazardous conditions of confinement in violation of the Fourth, Eighth, and Fourteenth Amendments.  He also asserts a state law claim of intentional infliction of emotional distress against all defendants. He seeks monetary relief, a declaratory judgment, and an injunction directing the defendants to maintain him on single cell status and "to act without further delay." *Id.* at 16.

### A.    Correctional Officer of Operation

The caption of the complaint includes the following two Doe defendants: "Correctional Officer John Doe/Jane Doe" and "Correctional Officer of Operation." *Id.* at 1.  The only two Doe

5

defendants listed in the description of the parties are Correctional Officer John Doe and Correctional Officer Jane Doe, both of whom worked in the Operation Room at Osborn from September 4, 2020 to November 5, 2020. *Id.* at 3. The plaintiff asserts no facts against any other individual who may have been employed as a correctional officer in the Operation Room. Because the plaintiff has included no facts regarding the conduct of defendant Correctional Officer of Operation, he has not alleged that Correctional Officer of Operation violated his federal constitutional rights or his rights under state law. Accordingly, all federal and state law claims asserted against defendant Correctional Officer of Operation are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### B. Official Capacity Claims for Monetary Damages and Declaratory Relief

The plaintiff sues the defendants in their individual and official capacities. To the extent that he seeks damages from the defendants in their official capacities, those claims for relief are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). The claims seeking monetary damages from defendants Quiros, Guadarama, Vasquez, Gammardella, Dr. Fury, Dr. Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe in their official capacities for violations of the plaintiff's federal constitutional rights are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

The plaintiff requests that the Court declare that the defendants violated federal constitutional rights. Compl. at 16. Under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908),

6

a plaintiff may seek prospective injunctive and declaratory relief to address an ongoing or continuing violation of federal law or a threat of a violation of federal law in the future. *See In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir. 2007); *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000). The plaintiff's request for a declaration that the defendants violated his federal constitutional rights in the past is barred by the Eleventh Amendment. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief") (citations omitted). Accordingly, the claim seeking declaratory relief from defendants Quiros, Guadarama, Vasquez, Gammardella, Dr. Fury, Dr. Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe in their official capacities is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### C.    Eighth Amendment Claims

The first four counts of the complaint are titled "Unconstitutional Condition of Confinement," "Failure to Act," "Deliberate Indifference," and "Cruel and Unusual Punishment." Compl. at 12-14. The Court construes these counts as asserting claims of deliberate indifference to the plaintiff's health and safety and failure to protect him from harmful conditions of confinement in violation of the Eighth Amendment.

Although a sentenced inmate may experience conditions that are "restrictive or even harsh," the Eighth Amendment prohibits the imposition of conditions that "involve the wanton and unnecessary infliction of pain" or violate "contemporary standard[s] of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (citation omitted). To state a claim of deliberate

indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element.  To meet the objective element, the inmate must allege that he or she was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his or her health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347.  The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise.  *See Wilson v. Seiter*, 501 U.S. 294, 304; *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348.  To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, the officials knew that he or she faced a substantial risk to his or her health or safety and disregarded that risk by failing to take corrective action.  *See Farmer*, 511 U.S. at 834, 837.

Courts within and without the Second Circuit have recognized that COVID-19 poses a serious risk of harm to inmates.  *See Fernandez-Rodriguez*, 470 F. Supp. 3d 323, 349-51 (S.D.N.Y. 2020) (collecting cases).  Additionally, it is well-established in the Second Circuit that "prison officials have an Eighth Amendment duty to protect inmates from exposure to communicable disease."  *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 439 (D. Conn. 2020) (citing *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) ("[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease."); *Lareau v. Manson*, 651 F.2d 96, 109 (2d Cir. 1981) ("[F]ailure to adequately screen newly arrived inmates for communicable disease" represents an "(omission) sufficiently harmful to evidence deliberate indifference to

8

serious medical needs"; "[I]t is unnecessary to require evidence that an infectious disease has actually spread in an overcrowded jail before issuing a remedy.").

The plaintiff has plausibly alleged that the conditions that he endured in C-Block in September and October 2020, involving exposure to other inmates who had exhibited COVID-19 symptoms, posed a serious risk of harm to his health, particularly given his age and his underlying medical conditions, including diabetes. Thus, the objective component of the Eighth Amendment standard has been met.

      1.      **Deliberate Indifference/Failure to Protect – Confinement in C-Block**

The plaintiff alleges that at the time of his transfer to Osborn in early September 2020, the defendants knew that C-Block housed inmates with COVID-19 symptoms or had housed inmates who had tested positive for COVID-19. The plaintiff also suggests that the defendants knew that he had tested negative for COVID-19 at Garner prior to his transfer to Osborn and that he was sixty-four and suffered from high blood pressure and diabetes. The plaintiff contends that despite this knowledge, the defendants either placed him in C-Block or refused to transfer him from C-Block to a cell in another unit that housed inmates who had not exhibited COVID-19 symptoms and refused to arrange to have him re-tested or assessed by medical staff members once he began to exhibit symptoms of COVID-19. The plaintiff has plausibly alleged that the defendants were deliberately indifferent to the serious risk of harm posed by his confinement with inmates who had exhibited symptoms or who had contracted COVID-19. The Court will permit the Eighth Amendment claims of deliberate indifference to the plaintiff's health and failure to protect him from a risk of harm to his health, asserted in counts one and two, to proceed against Commissioner Quiros, Warden Guadarama, Deputy Warden Vasquez, Unit

Manager Gammardella, Dr. Fury, Dr. Wright,  Correctional Officer John Doe, who worked in the Operation Room, and Correctional Officer Jane Doe, who worked in the Operation Room, in their individual capacities and in their official capacities to the extent that the plaintiff seeks injunctive relief.

### 2.      Deliberate Indifference – Protective or Preventative Measures

In count three, the plaintiff alleges that at the time of his placement in C-Block and during his confinement in C-Block, the defendants ignored executive orders and the Center for Disease Control's protocols, including social distancing and the wearing of masks, to be implemented to prevent the spread of COVID-19 in prisons.  The plaintiff contends that the defendants failed to take necessary precautions to protect him from contracting COVID-19 or to prevent the spread of the virus within Osborn and C-Block.  The plaintiff has plausibly alleged that the defendants were aware of the potentially harmful and infectious nature of COVID-19 but disregarded those risks to inmate health by "failing to take reasonable measures to abate [the risks]." *Farmer*, 511 U.S. at 847.  This Eighth Amendment deliberate indifference to health claim will proceed against defendants Quiros, Guadarama Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe in their individual capacities and in their official capacities to the extent that the plaintiff seeks injunctive relief.

### 3.      Deliberate Indifference - Conditions in Segregation Unit

The plaintiff alleges that on October 23, 2020, after he had contracted COVID-19 and medical providers at MacDougall-Walker had treated him for that condition, he returned to Osborn.  The plaintiff alleges that instead of placing him in the quarantine unit, B-Block, the defendants placed him in a cell in the segregation unit.  During his ten-day confinement in the

segregation unit, the defendants allegedly failed to provide him with any hygiene items, including a face cloth, soap, a toothbrush, and hot water, and instructed block officers not to permit him to shower.  Compl. at 8-9 ¶¶ 25, 27.  The plaintiff also asserts that he wrote to Commissioner Quiros and the Warden and about the conditions in the segregation unit.

The Eighth Amendment prohibits prison officials from interfering with an inmate's need to engage in personal hygiene practices or possess the necessary items to maintain personal hygiene. *See, e.g.*, *Walker v. Schult,* 717 F.3d 119, 127 (2d Cir. 2013) (citing cases for the proposition that "the failure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional violation").  Furthermore, there is no bright-line test for an Eighth Amendment claim based on unsanitary conditions.  *See Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015) (reject[ing] . . . that there is any bright-line durational requirement for a viable unsanitary-conditions claim").  Rather, "both the duration and the severity of the exposure" are relevant considerations. *Id.*  Although the plaintiff's confinement in the segregation unit was relatively short, ten days, the Court concludes that the deprivation of showering privileges combined with the lack of a hygiene items necessary to wash himself in his cell, and the importance of keeping himself clean due to the COVID 19 pandemic, constitutes a condition or combination of conditions that deprived the plaintiff of the basic human need of maintaining personal hygiene.

The plaintiff generally asserts that all defendants were responsible for exposing him to the unconstitutional deprivations of hygiene items and showers during his ten-day confinement in the segregation unit.  This general assertion does not permit the Court to determine whether any defendant was directly involved in or had knowledge of the potentially serious deprivations

11

of the plaintiff's basic human need for hygiene items and showers to maintain his health.  The

Court will permit this Eighth Amendment deliberate indifference to health claim to proceed

against defendants Quiros, Guadarama Vasquez, Gammardella, Fury, Wright, Correctional

Officer John Doe, and Correctional Officer Jane Doe in their individual capacities and in their

official capacities to the extent that the plaintiff seeks injunctive relief for further development of

the record.

### C.      First, Fourth, and Fourteenth Amendment Claims

The first count of the complaint also includes claims that defendants Quiros, Guadarama,

Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer

Jane Doe violated the plaintiff's Fourth and Fourteenth Amendment rights.  The second count of

the complaint includes additional claims that defendants Quiros, Guadarama, Vasquez, Fury,

Gammardella, and Wright violated the plaintiff's First, Fourth, and Fourteenth Amendment

rights by failing to exercise their authority to prevent his exposure to other inmates in C-Block

who had exhibited symptoms of COVID-19.

### 1.      First Amendment

The First Amendment provides: "Congress shall make no law respecting an

establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom

of speech, or of the press; or the right of the people peaceably to assemble, and to petition the

Government for a redress of grievances."  U.S. Const. amend. I.  The plaintiff does not include

any facts to support a claim that defendants Quiros, Guadarama, Vasquez, Fury, and Wright

violated his First Amendment rights by failing to remove him from C-Block before he contracted

COVID-19.  The First Amendment claim asserted against defendants Quiros, Guadarama,

Vasquez, Gammardella, Fury, and Wright is dismissed.[2]  *See* 28 U.S.C. § 1915A(b)(1).

### 2.  Fourth Amendment

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  The plaintiff asserts no facts to state a plausible claim against any

defendant under the Fourth Amendment.  Accordingly, the claims asserted under the Fourth

Amendment are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### 3.  Fourteenth Amendment

The plaintiff does not articulate the basis of his allegation that the defendants violated his

Fourteenth Amendment rights by subjecting him to conditions of confinement that deprived him

of the basic human need for healthy living conditions.  To the extent that the plaintiff is asserting

a claim under the Due Process Clause of the Fourteenth Amendment, the Supreme Court has

held that "[w]here a particular Amendment provides an explicit textual source of constitutional

protection against a particular sort of government behavior, that Amendment, not the more

generalized notion of substantive due process, must be the guide for analyzing these

claims."  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks and citation

omitted).  Because the Cruel and Unusual Punishment Clause of the Eighth Amendment

provides protection against inhumane conditions of confinement, the Court has analyzed the

plaintiff's claims regarding the dangerous conditions of confinement to which the defendants

---

[2]  Although the plaintiff includes allegations that the block officers in the segregation unit may have retaliated against him for making verbal complaints about his confinement in C-Block, he does not name any of

exposed him at Osborn in September, October, and November 2020 under the Eighth

Amendment rather than the Fourteenth Amendment's Due Process Clause.  *See United States v.*

*Lanier*, 520 U.S. 259, 272 n.7 (1997) ("If a constitutional claim is covered by a specific

constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed

under the standard appropriate to that specific provision, not under the rubric of substantive due

process.").  The claims that defendants Quiros, Guadarama Vasquez, Gammardella, Fury,

Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe violated the plaintiff's

Fourteenth Amendment rights either by intentionally placing him in a unit that housed inmates

who had exhibited symptoms of COVID-19 or by failing to arrange his transfer to another

housing unit to prevent his exposure to COVID-19 and to reduce the possibility that he might

contract COVID-19 are dismissed.[3]  *See* 28 U.S.C. § 1915A(b)(1).

### D.     State Law Claim - Intentional Infliction of Emotional Distress

The plaintiff alleges that the conduct of defendants Quiros, Guadarama Vasquez,

Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe

in placing him in C-Block in September and October 2020 and in placing him in the segregation

unit for ten days after he had received medical treatment for COVID-19 at MacDougall-Walker

constituted a callous disregard for his health and safety and caused him to experience severe

emotional distress.  Under Connecticut law, in order to succeed on an intentional infliction of

emotional distress claim, a plaintiff must establish "(1) that the actor intended to inflict

emotional distress or that he knew or should have known that the emotional distress was a likely

---

these officers as defendants. Compl. at 8 ¶ 26.
    [3]   The court notes that the plaintiff includes allegations suggesting that staff members who interacted with him during his confinement in the segregation unit may have deprived him of hot water because of his national origin, he does not name these staff members as defendants. Compl. at 9 ¶ 27.

result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe." *Appleton v. Stonington Bd. Of Ed.,* 254 Conn. 205, 210 (2000) (citation omitted). In addition, "[w]hether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury." *Id.* (citation omitted).

### 1.    Individual Capacities

The plaintiff has asserted facts to suggest that the defendants intentionally subjected him to conditions that increased his exposure to other inmates who had exhibited symptoms of COVID-19, a potentially deadly virus, and that he in fact contracted the virus. These allegations are sufficient to meet the requirement that the defendants' conduct be outrageous or egregious. Other than describing the distress as "severe," the facts regarding the severity of the emotional distress that he experienced during his confinement in C-Block and in the segregation unit are sparse. The Court will permit the intentional infliction of emotional distress claim to proceed for further development. Accordingly, the Court will exercise supplemental jurisdiction over the claim to the extent that it is asserted against defendants Quiros, Guadarama Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe in their individual capacities.

### 2.    Official Capacities

Requests seeking injunctive relief for violations of state law by state employees in their official capacities are barred by the Eleventh Amendment. *See Vega v. Semple*, 963 F.3d 259, 283-84 (2d Cir. 2020) (holding plaintiff's claims for "prospective relief against Defendants in

their official capacity for violations of the Connecticut Constitution and state law ... are indeed barred by the Eleventh Amendment under the *Pennhurst* doctrine.") (internal quotation marks omitted). Sovereign immunity also bars requests seeking monetary damages from state employees in their official capacities for violations of state law. *See C.R. Klewin Ne., LLC v. Fleming*, 284 Conn. 250, 258, 932 A.2d 1053, 1058 (2007) ("The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law.") (citing *Miller v. Egan*, 265 Conn. 301, 313, 828 A.2d 549, 558 (2003) ("[A] suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state.") (internal quotation marks and citation omitted)). Thus, to the extent that the plaintiff asserts his claim of intentional infliction of emotional distress claim against defendants Quiros, Guadarama Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe in their official capacities, the claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1) and (2).

## ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

**(1)** The claim seeking monetary damages from defendants Quiros, Guadarama Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe in their official capacities for violations of the plaintiff's federal constitutional rights and the claim seeking monetary damages from defendants Quiros, Guadarama Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe in their official capacities for intentional infliction of emotional address are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). All federal and state law claims asserted against

16

Correctional Officer of Operation; the claim seeking declaratory relief from defendants Quiros, Guadarama Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe in their official capacities for violations of the plaintiff's federal constitutional rights; the First, Fourth, and Fourteenth Amendment claims asserted against defendants Quiros, Guadarama Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe in their individual and official capacities; and the state law claim seeking injunctive relief from defendants Quiros, Guadarama Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe in their official capacities for intentional infliction of emotional address are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  Thus, all claims asserted against Correctional Officer of Operation have been **DISMISSED**.

The following federal constitutional claims will proceed against the defendants in their individual capacities for damages and in their official capacities to the extent that the plaintiff seeks injunctive relief: **(A)** The Eighth Amendment claim of deliberate indifference to a serious risk of harm to the plaintiff's health by placing him in C-Block with other inmates who had exhibited symptoms or who had contracted COVID-19 as asserted against defendants Quiros, Guadarama, Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe;  **(B)** The Eighth Amendment claim of failure to protect the plaintiff from a serious risk of harm to his health by failing to move him to another housing unit and arranging for medical treatment and testing when he exhibited symptoms of COVID-19 as asserted against defendants Quiros, Guadarama, Vasquez, Gammardella, Fury, and Wright; **(C)** The Eighth Amendment deliberate indifference to health claim pertaining to protective and

preventative COVID-19 measures as asserted against defendants Quiros, Guadarama, Vasquez,
Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe;
and **(D)** The Eighth Amendment claim of deliberate indifference to health and/or need for
sanitary conditions of confinement related to the plaintiff's ten-day confinement in the
segregation unit without hygiene items or the opportunity to shower as asserted against
defendants Quiros, Guadarama, Vasquez, Gammardella, Fury, Wright, Correctional Officer John
Doe, and Correctional Officer Jane Doe.

The Court will exercise supplemental jurisdiction over the state law claim of intentional
infliction of emotional distress to the extent that it is asserted against defendants Quiros,
Guadarama Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and
Correctional Officer Jane Doe in their individual capacities.

**(2)** Within twenty-one (21) days of this Order, the Clerk shall prepare a summons
form and send an official capacity service packet to the U.S. Marshals Service. The U.S.
Marshals Service shall serve the summons, a copy of the complaint, and a copy of this order on
Warden Guadarama, Deputy Warden Vasquez, Commissioner Quiros, Unit Manager
Gammardella, Dr. Fury, and Dr. Wright in their official capacities by delivering the necessary
documents in person to the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT
06160.

**(3)** Within twenty-one (21) days of this Order, the Clerk shall verify the current work
addresses of: Warden Guadarama, Deputy Warden Vasquez, Commissioner Quiros, Unit
Manager Gammardella, Dr. Fury, and Dr. Wright and mail a copy of the complaint, this order,
and a waiver of service of process request packet to each defendant in his or her individual

capacity at his or her confirmed address.  On the thirty-fifth (35th) day after mailing, the Clerk

shall report to the Court on the status of each request.  If any defendant fails to return the waiver

request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service

and that defendant shall be required to pay the costs of such service in accordance with Federal

Rule of Civil Procedure 4(d).

**The Court informs the plaintiff that the Clerk cannot serve the complaint on
Correctional Officer John Doe, who worked in the Operation Room, or Correctional
Officer Jane Doe, who worked in the Operation Room, because he has not provided the
first or last name of either defendant.  The plaintiff will have ninety (90) days from the date
of this order to conduct discovery and file a notice identifying Correctional Officer John
Doe by his first and last name and Correctional Officer Jane Doe by her first and last
name.  The Court will dismiss the claims against any Doe defendant for whom the plaintiff
does not provide a first and last name within the time specified.**

(4)     Defendants Quiros, Guadarama Vasquez, Gammardella, Fury, and Wright shall

file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days

from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.

If the defendants choose to file an answer, they shall admit or deny the allegations and respond to

the cognizable claims recited above.  They may also include any and all additional defenses

permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be

completed within six months (180 days) from the date of this order. Discovery requests need not

be filed with the Court.

(6)     All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(7)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court.  Failure to do so can result in the dismissal of the case.  The plaintiff must write PLEASE NOTE MY NEW ADDRESS on the notice.  If the plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address.  The plaintiff should also inform the attorney for the defendants of his new address.

(8)      The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court.  The plaintiff is advised that the Program may be used only to file documents with the Court.  Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court.  Therefore, discovery requests must be served on defendants' counsel by regular mail.

(9)     The Clerk shall send a courtesy copy of the complaint and this order to the Connecticut Attorney General and to the DOC Legal Affairs Unit.

(10)    The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk.  The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

SO ORDERED at Hartford, Connecticut this 27th day of April, 2021.

_____/s/_____
Michael P. Shea
United States District Judge

20