UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT TOUSSAINT,<br>　　Plaintiff, | :<br>:<br>: |
| v. | :    Case No. 3:21cv32 (MPS) |
| | : |
| WARDEN GUADARAMA, ET AL.,<br>　　Defendants. | :<br>: |

## RULING ON MOTION TO DISMISS

The plaintiff, Robert Toussaint, is currently confined at Osborn Correctional Institution in Somers, Connecticut ("Osborn"). He initiated this action by filing a civil rights complaint under 42 U.S.C. § 1983 claiming that Warden Guadarama, Deputy Warden Vasquez, Commissioner Quiros, Unit Manager Gammardella, Dr. Fury, Dr. Wright, Correctional Officer John Doe, Correctional Officer Jane Doe, and Correctional Officer of Operation subjected him to conditions that were detrimental to his health during his confinement at Osborn from September to November 2020. ECF No. 1.

On April 27, 2021, after reviewing the complaint under 28 U.S.C. § 1915A(b), the Court concluded that the following federal constitutional claims would proceed against the defendants in their individual capacities and in their official capacities to the extent that the plaintiff sought injunctive relief : **(A)** the Eighth Amendment claim of deliberate indifference to a serious risk of harm to the plaintiff's health by placing him in C-Block with other inmates who had exhibited symptoms or who had contracted COVID-19 as asserted against defendants Quiros, Guadarama, Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe; **(B)** the Eighth Amendment claim of failure to protect the plaintiff from a serious risk of harm to his health by failing to move him to another housing unit and arranging for medical

treatment and testing when he exhibited symptoms of COVID-19 as asserted against defendants Quiros, Guadarama, Vasquez, Gammardella, Fury, and Wright; **(C)** the Eighth Amendment deliberate indifference to health claim pertaining to protective and preventative COVID-19 measures as asserted against defendants Quiros, Guadarama, Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe; and **(D)** the Eighth Amendment claim of deliberate indifference to health and/or need for sanitary conditions of confinement related to the plaintiff's ten-day confinement in the segregation unit without hygiene items or the opportunity to shower as asserted against defendants Quiros, Guadarama, Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe. *See* ECF No. 8 at 17-18. The Court also exercised supplemental jurisdiction over the state law claim of intentional infliction of emotional distress asserted against defendants Quiros, Guadarama Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe in their individual capacities. *Id.* at 18.[1]

Defendants move to dismiss the claims asserted against them on the ground that the plaintiff did not exhaust his available administrative remedies as to those claims prior to filing the complaint. ECF No. 21. For the reasons set forth below, the motion to dismiss is denied.

---

[1] The Court dismissed the following claims asserted in the complaint pursuant to 28 U.S.C. § 1915A(b)(1) and (2): the claim seeking monetary damages from defendants Quiros, Guadarama Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe in their official capacities for violations of the plaintiff's federal constitutional rights; the claim seeking monetary damages from defendants Quiros, Guadarama Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe in their official capacities for intentional infliction of emotional distress; all federal and state law claims asserted against Correctional Officer of Operation; the claim seeking declaratory relief from defendants Quiros, Guadarama Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe in their official capacities for violations of the plaintiff's federal constitutional rights; the First, Fourth, and Fourteenth Amendment claims asserted against defendants Quiros, Guadarama Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe in their individual and official capacities; and the state law claim seeking injunctive relief from defendants Quiros, Guadarama Vasquez, Gammardella, Fury, Wright, Correctional Officer John Doe, and Correctional Officer Jane Doe in their official capacities for intentional infliction of emotional distress. ECF No. 8 at 16-17.

I.   Facts

On September 4, 2020, prison officials at Garner Correctional Institution ("Garner") transferred the plaintiff to Osborn. Compl. ¶ 13. At that time, the plaintiff was sixty-four years old and suffered from high blood pressure and diabetes. *Id.* ¶ 11. He received insulin four times a day and blood pressure medication once a day. *Id.* At Garner, the plaintiff had tested negative for COVID-19. *Id.* ¶ 16.

Correctional Officers Jane Doe and John Doe, who worked in the Operation Room at Osborn, placed the plaintiff in a cell in C-Block. *Id.* at 3 ¶¶ 8-9; at 5 ¶ 14. Inmates in C-Block "were constantly catching Covid" or "had symptoms of Covid." *Id.* ¶ 15. The plaintiff asked Unit Manager Gammardella to arrange for him to be re-tested for COVID-19 and to transfer him to another housing unit. *Id.* ¶¶ 15-16. Unit Manager Gammardella directed the plaintiff to contact the medical department regarding his request to be re-tested for COVID-19. *Id.* ¶ 16. The plaintiff sent requests to the medical department and to Drs. Fury and Wright asking that he be re-tested for COVID-19. *Id.* Neither the medical department, nor Dr. Fury, nor Dr. Wright responded to the requests for re-testing. *Id.*

From September 12, 2020 until September 17, 2020, the plaintiff experienced "light headaches." *Id.* ¶ 17. During his visits to get his insulin shots, the plaintiff informed medical staff members that he was not feeling well. *Id.* In response to the plaintiff's complaints, staff members directed him to sign up for sick call. *Id.* The plaintiff signed up for sick call but was not summoned to the medical department. *Id.*

On September 17, 2020, the plaintiff submitted multiple requests to the medical department because he was sweating and coughing in addition to experiencing headaches. *Id.* ¶

3

18. In each request, the plaintiff explained that he suffered from high blood pressure and diabetes. *Id.*

At some point between September 17, 2020 to October 2, 2020, the plaintiff spoke to Warden Guadarama and Deputy Warden Vasquez. *Id.* ¶ 9. The plaintiff stated that he suffered from high blood pressure and diabetes and should not be housed in C-Block; he was experiencing headaches, a cough, and body aches; and he had sent requests to be re-tested for COVID-19 and to be treated for his symptoms to the medical department but had received no responses to his requests. *Id.* Warden Guadarama and Deputy Warden Vasquez ignored the plaintiff's complaints and did not contact the medical department regarding his symptoms. *Id.* On October 7, 2020, the plaintiff believed that he was very sick because his symptoms had become worse. *Id.* ¶ 20. He informed a block officer that he needed to be examined by a medical staff member. *Id.* The officer instructed the plaintiff to send a written request to the medical department. *Id.* The plaintiff sent a request to the medical department. *Id.*

On October 9, 2020, the plaintiff experienced shortness of breath and tightness in his chest. *Id.* at 7 ¶ 21. A block officer permitted the plaintiff to go to the medical department. *Id.* Upon his arrival at the medical department, a nurse tested the plaintiff for COVID-19 and informed the plaintiff that if he had symptoms of COVID-19, he would be placed in the punitive segregation unit. *Id.* ¶ 22; at 18, 20. Drs. Fury and Wright authorized the plaintiff's placement in the segregation unit due to his symptoms of COVID-19. *Id.* ¶ 22. On October 10, 2020, medical staff members transferred the plaintiff to the quarantine unit at Osborn, B-Block. *Id.* ¶ 23. The plaintiff remained in the quarantine unit for three days. *Id.*

On October 12, 2020, the plaintiff learned that he had tested positive for COVID-19. *Id.* at 18, 20-21. On October 13, 2020, medical staff members transferred the plaintiff to MacDougall-Walker Correctional Institution to be treated for COVID-19. *Id.* ¶ 24. The plaintiff remained at MacDougall-Walker for two weeks. *Id.* On October 23, 2020, medical staff members at MacDougall-Walker transferred the plaintiff back to Osborn. *Id.* ¶ 25. Upon his arrival at Osborn, the defendants placed the plaintiff in the punitive segregation unit for ten days instead of placing him in the quarantine unit. *Id.* at 7-8 ¶ 25.

The defendants failed to provide the plaintiff with any hygiene items, including a face cloth, soap, a toothbrush, and hot water. *Id.* at 8-9 ¶¶ 25, 27. The defendants and medical staff members instructed the block officers in the segregation unit not to permit the plaintiff to shower. *Id.* at 8 ¶ 25. The plaintiff submitted requests to Warden Guadarama, Deputy Warden Vasquez, and Commissioner Quiros regarding the inadequate and discriminatory treatment that he endured during this confinement in the segregation unit but received no responses to his requests. *Id.* at 8-9 ¶¶ 25, 27. He also filed grievances complaining about the conduct of all defendants. *Id.* at 9 ¶¶ 27-28.

On November 2, 2020, block officers in the segregation unit informed the plaintiff that he could return to general population "if [they did not"] get any more complaints out of [him]." *Id.* at 8 ¶ 26. The plaintiff agreed to stop making complaints and the block officers escorted him back to his cell in C-Block. *Id.* The officers instructed the plaintiff not to say anything about their request that he stop complaining. *Id.*

**II.     Standard of Review**

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* However, when reviewing a motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor. *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012). Although the Court may consider affirmative defenses in deciding a Rule 12(b)(6) motion, it may do so only if all of the facts necessary to the resolution of the motion appear on the face of the complaint. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

**III.    Discussion**

The defendants move to dismiss the claims against them because the complaint includes no allegations that the plaintiff fully exhausted his administrative remedies under State of Connecticut Department of Correction Administrative Directive 9.6. Specifically, the defendants contend that although the plaintiff alleged that he submitted requests and written grievances regarding the unconstitutional conditions of confinement involving COVID-19, he did not allege that he appealed the failure of prison officials to respond to the grievances and requests. The defendants also contend that the Court should decline to exercise supplemental jurisdiction over the state law claim of intentional infliction of emotional distress if it dismisses the federal constitutional claims.

6

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.") Section 1997e(a) applies to all claims regarding prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and it requires exhaustion of any available administrative remedies, regardless of whether they provide the relief the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim is not exhausted until the inmate complies with all administrative deadlines and procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

The exhaustion requirement may be excused, however, when an administrative remedy is not available in practice even if it is "officially on the books." *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016). This means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). The United States Supreme Court has established three circumstances under which an inmate need not exhaust the administrative procedure because it is deemed unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. "Whether an administrative

7

remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

Failure to exhaust is an affirmative defense under the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* Nevertheless, a defendant may move for dismissal if the failure to exhaust administrative remedies under the prison grievance program is clear from the face of the complaint. *See, e.g.*, *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints.... However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement.") (quotations and citations omitted); *Torrence v. Pesanti*, 239 F. Supp. 2d 230, 233 (D. Conn. 2003) (Because "failure to exhaust administrative remedies under the PLRA is an affirmative defense. . . . [it] is not a ground for dismissal unless it is readily apparent from plaintiff's pleadings and/or attachments.").

The defendants contend that State of Connecticut Department of Correction Administrative Directive 9.6 is applicable to all matters relating to any aspect of a prisoner's confinement that are subject to the Commissioner's authority and that are not specifically identified in subsections (B) through (I) of Administrative Directive 9.6(4). In support of this contention, the defendants refer to a version of Administrative Directive 9.6 that was in effect as of August 15, 2013. *See* Mem. Supp. Mot. Dismiss at 5. They do not, however, attach that version of the Directive to their motion to dismiss. Nor is that version available on the

8

Department of Correction website. The current version of Administrative Directive 9.6 available on the Department of Correction website became effective April 30, 2021 and superseded the version of Directive 9.6 that had been in effect since August 15, 2013. *See* https://portal.ct.gov/DOC/AD/AD-Chapter-9. Furthermore, the defendants do not acknowledge that a separate administrative directive is applicable to claims regarding medical treatment and the conduct of medical providers. *See generally*, State of Connecticut Department of Correction Administrative Directive 8.9, Administrative Directive for Health Services, effective April 30, 2021, and superseding version of Administrative Directive 8.9 in effect as of July 24, 2012, available at: https://portal.ct.gov/DOC/AD/AD-Chapter-8. Because failure to exhaust administrative remedies is an affirmative defense, the defendant "bear[s] the initial burden of establishing, by pointing to legally sufficient source[s] such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs*, 788 F.3d at 59 (internal quotation marks and citation omitted). The defendants have not met this burden.

Furthermore, the Court cannot conclude that it is clear from the face of the complaint that the plaintiff failed to exhaust his available administrative remedies under Administrative Directive 9.6 or under Administrative Directive 8.9. The plaintiff alleges that he took steps to exhaust his remedies by filing written requests and grievances but received no responses to the requests or grievances. ECF No. 1 at 5-9 ¶ 16, 25, 27. Although he does not specifically refer to any appeals of grievances that he may have filed, he is not required to plead the exhaustion of remedies in the complaint. Nor is it clear, given the fact that the defendants did not submit the August 15, 2013 version of Administrative Directive 9.6, that an appeal of a non-response to a

9

grievance was an available remedy at the time of the events that give rise to the claims that proceed in this action.

Accordingly, the motion to dismiss the complaint on the ground that the plaintiff did not fully exhaust his available administrative remedies under Administrative Directive 9.6 as to his claims is denied. The defendants are not precluded from raising the defense of exhaustion of administrative remedies in a motion for summary judgment.

## IV. Conclusion

The Motion to Dismiss, [**ECF No. 21**], the complaint on the ground that the plaintiff did not fully exhaust his available administrative remedies under Administrative Directive 9.6 as to his federal constitutional claims is **DENIED.** Defendants are directed to file an answer to the complaint within twenty days of the date of this order.

SO ORDERED at Hartford, Connecticut this 3rd day of January, 2022.

/s/
Michael P. Shea, U.S.D.J.